Thank you, your honors. I think before I start the argument, I think it's important to size up what this case is not about because of the nature of the record below. This case is not about the anything dealing with the determination of the 922 G conviction. This case is solely about sentencing law, both as to a challenge to the offense level calculation and to the criminal history points that were assessed against Mr. Stapp. Much of the law that is cited, I believe in both briefs, we are looking at law where the recitation is involved in 922 G culpability cases, where evidence can be used even for different reasons other than sentencing, but that's not what we're talking about even though we have cited some of that law simply because that's where it resides in the record. We have two issues that we presented to the court. The first one deals with the unreasonableness of the offense level calculation under the guidelines. The second issue deals with the unreasonableness of the criminal history points as calculated by the district court and then giving rise to a guideline range that was determined we submit by error in the calculation of the offense level as well as error in the criminal history computation. Unless the court wants something different, I will just follow the outline that we have in the brief. The first issue is the issue of the court's reliance on hearsay evidence in the enhancement found in 2K21B6B, which allows a sentencing enhancement in a 922 G case if the government can prove by preponderance of the evidence that the defendant possessed a gun in connection with an unlawful possession of a gun. The other felony that is involved in this case is, and I'm not going to use the legal terms, but basically that he had a stolen car and he possessed it. That's how we're looking at that particular issue. A sentence must be reasonable and under all of the law, the correct application of the guideline-based offense level enhancement requires correctly finding all predicate facts by a preponderance of the evidence. In this particular case, and in all cases, the correct finding of predicate facts requires proof of facts by reliable evidence, not by unreliable evidence. And hearsay, and that is kind of the first part of this issue number one, is presumptively unreliable. If a hearsay statement bears minimal indicia of reliability, then it's permissible for a court to go forward. In this particular situation, we submit here and in our brief that that's really where the error occurred. And I note at least two of the judges here have been on panels talking about the Fennel case. And that's where we believe the error occurred in this particular situation. And Fennel- How is this case like Fennel? I don't necessarily- Pardon me, I'm sorry, Your Honor. Tell me how this case is like Fennel. Fennel stood for the general proposition that evidence is unreliable and should not be used to prove the truth of the matter asserted, which is of course what we're always talking about in a hearsay section, and that a court should not enhance a sentence based on unsworn, unobserved, uncorroborated statements, hearsay. And we submit that that's what happened here, Your Honor. And that's how that directly relates to the Fennel case, which has been established law, I believe, since 1994. There is some indicia, isn't there, here of reliability. We have- it's Ravine, I think, that you're speaking of, the girlfriend of Fennel's brother. I mean, we have body camera footage, or I don't have it, but there was body camera footage. So her demeanor and her voice was-  We have that, which is different than Fennel. We have the fact that she'd reported the vehicle stolen or someone had. And certainly- We have the fact- Well, I apologize. And that supports her saying she didn't give him permission. He had an opportunity to explain or rebut what she was saying. I mean, I see this as different. And, Your Honor, I just disagree with- Certainly, the government argues there's indicia of reliability. We do not argue that. As a matter of fact, we disagree with that. Right. For several- I don't see it as the same as Fennel, is my point. And I understand. First of all, when you look at the Fennel- If you analyze our facts under the Fennel test, I don't believe there's any question that there is a complete lack of any sworn testimony of any sort. At the sentencing hearing, nobody testified. There is not any type of an affidavit involved in this particular case. So I think that it falls on the first prong of Fennel. The indicia of reliability falls also. We submit that while the body cam evidence was admitted, there's absolutely no evidence that- or no person that testified at the hearing that they observed that, that they observed her demeanor or anything else. And importantly, her statements- We're always looking at what's the truth of the matter asserted. And the fact that she says- And this kind of bleeds into the second part of this argument, Your Honor. But the fact that she says, it was my car and I didn't give consent. There's nothing that shows that it, in fact, was her car. And that, in fact, she did refuse consent. Well, there's some evidence of that. I mean, the fact that she declared it was her car would be some evidence that it was her title. And the fact that the police gave her the car back has to be some evidence that they were persuaded, for unknown reasons, that it was her car. And under the hearsay analysis, I don't disagree that there's some evidence. The question is whether it's reliable. But then- and this is- I'm going to conflate the first and second arguments here because I don't know that on this particular analysis I can separate them. But the second piece is that there was, in fact, proffered evidence that she was not the sole owner of the car. So that's why the truth of the matter that she asserts that it was her car, there's nothing where she asserts she was the sole owner of the car. There's nothing where she asserts- What proffered- that's not an issue in our case, is it? That the proffered evidence was rejected? What was the proffered evidence? Was it that he, the husband was the co-owner? What was the proffered evidence? Yes, Your Honor, the proffered- there was proffered evidence. That's- I don't even want to say it was contrary. It's absolutely reconcilable and consistent with what, even if you accept her hearsay statements as truthful, it's not inconsistent. His proffered evidence was that Damien, his brother, who was with them that night, gave him the keys. Well, yeah, but that's- giving the key doesn't mean he was an owner of the car. You could share a second key with somebody without giving them ownership to the car. That's true, but there was no evidence that, to the contrary, that he was not the owner of the car. I'm just- I just want to make sure I understand. Was there proffered evidence that he, the husband, was a legal owner of the car? And if so, did the court ever rule on that proffered? That's what I want to know. A, the court did not rule, and that's a problem here. And I understand what you're saying, Your Honor. Was there a formal proffer? I hear by proffer that we can prove that the defendant- I mean, that the husband was a legal owner of the car. Was that a proffered piece of evidence? No, that it was- Thank you, that's the way I understood it, that that was not proffered. No, and if I- We're fine. I didn't intend to mislead the court, Your Honor. However, when it comes to the preponderance of the evidence standard on proving another felony, the fact of that felony under Oklahoma law, which is what was in play here, requires that a person, under the way this case played out, that- let me say this differently- ignoring the possibility that there could be another co-owner, which is, while there's no proffer, it's not unreasonable to assume here they were husband and wife, and ignoring the possibility and the undisputed proffer that Damien gave him the keys, that is insufficient to get to the point of finding that there was another felony that Mr. Stapp stole the car. And when you put that into the context of the fact that three of them went to the casino together, this isn't an unrelated person. These people were all together. They were at the casino. The proffer and the evidence that came out at trial is consistent with the facts. It's not unreasonable to assume that those facts support that Damien was, in fact, a co-owner of the car, and that he gave consent. Our position is that with that sitting out there, it was error for the judge to find that the government bore its burden of proving that there was another felony involved in this- on these facts. I will leave the rest of this unless the court wants to, because I have a little bit over three minutes left, and move on to the second primary argument in the brief. And I'm going to label this McGirt, just for the purposes of the argument. This is difficult. We recognize this was not preserved. I don't want to attempt to mislead the court. We know that. Nevertheless, we are urging this court to take it up on de novo review. This issue is circulating in the district court. There's one case in Brown where this was brought up, and for reasons that I don't understand, was not appealed to this court, but it's out there. And the question really is- Well, counsel- Yes, Your Honor. Can I jump in? Of course. You say that it's out there. Is this a question of first impression for this circuit? I believe what we're talking about may be a case of first impression in the whole country, Your Honor. We could not find any- Let me just ask you this. I want to ask you about a case that was decided some time ago, and it's United States v. Garcia. It's one of our cases where we said that the sentencing guidelines don't permit collateral attacks on prior sentences except those alleging a complete denial of a right to counsel. Now, it seems to me that that answers this issue, but maybe I'm missing something. Could you address that case? I will try, Your Honor. I hope successfully. I think it's the easy way to explain this is that thus far the cases that have held that way happen to be cases that arose under the Sixth Amendment violation that was addressed in Gideon and then the progeny. But no court has ever said that is the only time that anything can happen, and we submit that McGirt is another time because McGirt held that the Hughes County Court did not have jurisdiction to hear those cases. The law that we have cited indicates that leads to the legal conclusion that those Hughes County cases are void as a matter of law. Now, when we're talking about the comparison with Garcia, first of all, Garcia- you have to look at what the underlying theory of attack, if you will. Garcia was a case that was based on the defendant's collateral assertion of actual innocence. That's not what we've got in McGirt. McGirt is a straight-up jurisdiction case. It doesn't require opening the record. It doesn't require having any evidence. If you look at the pre-sentence report and there's a conviction out of Hughes County, that conviction was obtained in violation of the sovereign rights of the Creek tribe. It doesn't require opening a record. It's just like denial of counsel under the Sixth Amendment. The difference between ineffective assistance of counsel, collateral attacks, and denial of counsel. Easy to ascertain in a record. Did the defendant- Counsel, was there any denial of counsel in these previous convictions? No, but they were declared void by McGirt. Is there any challenge being made now to, other than the Indian country versus state, is there any suggestion that these convictions were invalid in any way, shape, or form? McGirt. Yes, that's exactly- No, I ask- In addition to McGirt- Apart from where they occurred, is there any question at this point that those were valid convictions? Other than McGirt. I'm out of time. May I respond to the question? Thank you, Your Honor. No, there is no- and we're not challenging the convictions in and of themselves. We're challenging- What's your best case to say that we should apply McGirt retroactively in this context? I don't believe it's a retroactive application of McGirt. It's the use of McGirt to impose new liberty deprivations to the client. We're not challenging the actual convictions. We're not doing that. We're simply saying that the effect is that you should not be able to use a truly jurisdictionally void conviction down the road to continue punishing somebody under the reasonableness of the sentencing guidelines as we count points for criminal history. I have nothing else. Thank you. Thank you, counsel.  Good morning. May it please the court. Jared Lehman for the United States. To address one of the questions from the panel earlier, to my understanding, the issue of McGirt and prior final state convictions, according to my research, has not been fully litigated before this court. I believe this may be the first case in which this question is going to be before the court for consideration. I believe it comes to the court on a matter of plain review. And in looking at McGirt itself, I think McGirt recognizes that these former finalized state convictions are, in fact, going to remain final. And I'll read just the smallest portion of the McGirt opinion itself, page 933 of McGirt opinion. Still, Oklahoma and the dissent fear thousands of Native Americans like McGirt wait in the wings to challenge the jurisdictional basis of their state court convictions. But this number is adamantly speculative, should be admittedly speculative, because many defendants may choose to finish their state sentences rather than risk re-prosecution in federal court where sentences can be graver. Other defendants who do try to challenge their state convictions may face significant procedural obstacles thanks to well-known state and federal limitations on post-conviction review and criminal proceedings. So McGirt itself recognizes that there are going to be a number, I submit, of finalized state convictions that remain finalized absent this prospective understanding that the reservation status in Oklahoma is what we understand it to be today. And that's the case with this defendant. He had finalized state-level convictions that were used to enhance his criminal history score. Well, counsel, the passage you just read, didn't it indicate that certain defendants who have been convicted in state court may elect not to bring a McGirt challenge? But here, Mr. Stapp is bringing a McGirt challenge to the use of these convictions to enhance his sentence. And, you know, just taking a step back, I mean, didn't McGirt, and for that matter the Murphy decision, grant habeas relief based on the lack of jurisdiction? Why wouldn't that apply here? The defendant hasn't applied for that here. That's why. So these convictions remain finalized. Well, no, he's challenging and making a collateral attack on the use of these convictions because the state court, he's arguing he didn't have jurisdiction. Now, how is that any different from what Murphy and McGirt were arguing? Your Honor, I think the vehicle that Murphy and McGirt took is much different. They didn't wait until sentencing. They took affirmative steps to vacate those convictions through the federal court process that's available to them. They were both habeas cases. They didn't bring this up on direct appeal. They were both habeas cases. Indeed. Collateral attacks. Yes, Your Honor, indeed. But here, however, we have a defendant who's waiting to collaterally attack his prior convictions at sentencing, and that's something this court has previously held that a defendant cannot do. He cannot wait until sentencing to collaterally attack those convictions. Okay. And you're relying on the case we were just talking about? Is that the best case? Yes, Your Honor. Garcia. Yes, Your Honor, I believe that it is, and it has been a little developed in this court's unpublished opinions that I go through in my brief, but yes, Your Honor, that's correct. Well, if that's the case, then why are you saying we haven't addressed this issue? It sounds like your argument is that we have addressed this issue. Well, in a manner of speaking, yes, Your Honor, you certainly have addressed this issue, but as far as the retroactive application, as it were, of McGirt, this court has not squarely issued a ruling on that that I'm aware of. Well, can you address what I understand the defendant's argument is here, which is that we should essentially extend Garcia to this situation, to the conviction that's void for one jurisdiction, and why is that so much different than what we've said as far as ineffective counseling? I think a couple of things. Number one, I think McGirt itself doesn't recognize it being a new constitutional right. It's simply a new issue of statutory interpretation. And then when you read McGirt after Castro Huerta, it becomes clear that Oklahoma has some sort of jurisdiction within the reservation boundaries. And so the question really becomes, what kind of jurisdiction does Oklahoma have that remains within the reservation, within the borders of the state? And so if we are going to look at it in terms of jurisdiction, there's two particular types of jurisdiction that we can look at, subject matter jurisdiction and personal jurisdiction. The state certainly believes that it has full jurisdiction within its boundaries. So the state would have full jurisdiction, it believes, and I think you can look at that in terms of personal jurisdiction. It can't be subject matter jurisdiction because the defendant couldn't necessarily waive that. But if it's personal jurisdiction that the state retains, the defendant could waive that. And so if we apply that personal jurisdiction standard, barring from civil law, if I can remember my civil procedure correctly, 12v1 subject matter jurisdiction has a very broad time in which that can be raised. Personal jurisdiction, however, has a very narrow time in which that can be raised as a defense. Applying that theory to these valid state convictions, a defendant could have chosen to waive personal jurisdiction at that time. I really don't want to go and face these charges that I've had in this defendant's case, assault and larceny. I don't want to go face those charges in the federal court because I might have to do much more time. It certainly could have been the defendant's choice to waive personal jurisdiction and stay in state court where there is a much better sentencing framework, there's more opportunity for pardon and parole, things of that nature. I'm a little confused here. When I hear personal jurisdiction, I think of international shoe and minimum contacts and all that. I haven't seen any discussion of personal jurisdiction in these Murphy-McGirt cases, the other cases you cited. Can we find any guidance in the McGirt context for the argument you're making? Those particular arguments haven't been developed quite fully at the federal court level. They're percolating in the state system. I'll refer the court to, for example, the city of Tulsa v. O'Brien. It's a state court of Oklahoma, a criminal court of appeals opinion. And that's percolating at that level. But looking at Castro Huerta at the Supreme Court level, it's clear that Oklahoma has retained at least some type of jurisdiction with an Indian country. So to say that these convictions of this defendant were totally without jurisdiction, I believe is simply an incorrect statement in light of Castro Huerta. Pivoting to the hearsay at sentencing issue one in the appeal, it seems to me that the primary, the grovelment of the dispute, is that the district court didn't side with the defendant's proffer. But although I submit it's a plain error review, even under a clear error type of review, what we're looking for is some sort of foundation in the record for those statements, or for the court's findings. And if the court is choosing between one of two plausible explanations for the evidence before it, then this court would not reverse the lower court's decision. And that's exactly what happened here. The United States submitted its evidence that the defendant stole a car. The defendant submitted his evidence via proffer that he did not steal a car. We have two plausible explanations. Either the defendant did steal a car, or the defendant did not steal a car. The district court chose the explanation that the defendant did steal the car and applied the sentencing enhancement based on that application. And under a clear error standard review, this court would not overturn the district court's decision in that context. Plain error similarly applies, and there's nothing to overturn. Let me move to this possession of a weapon in connection with the unauthorized car. I'm troubled by that one because the district court said, well, he was emboldened. He acted more broadly to take that car because he had a weapon. He never used it or displayed it, but the court said, psychologically, it must have given him confidence to take that car, and that's why the weapon was in connection with the unauthorized car. It seems to me that, on the facts, emboldenment has nothing to do with this case. He wasn't needing emboldenment from the weapon at all. The person he thought had authority gave him a key and said, take it. And he was going and going to come back. He wasn't had any nefarious intent to steal the car. He was doing what he thought he was authorized to do. So he had a weapon, so it was coincidentally with him. But I think it means it requires more than just a coincidental presence of the weapon while you're committing a crime. It has to be in connection with the crime, and the connection that the district court said was emboldenment. And I don't think that there's anything in the evidence to support that he needed emboldenment, wanted emboldenment, or that the weapons provided any more likelihood that he would have taken that car. So could you address that issue of whether the possession of the weapon was in connection with, as opposed to just happenstance to have been with him when the offense occurred? Your Honor, I don't know that that issue is squarely before the court as being raised by the defendant. But regardless, possessing the weapon in connection with the stolen vehicle, I would agree with the district court that possessing this weapon emboldens you to take the car. But he didn't think he was taking it against the interest of anybody. He didn't think he had to defend himself against anybody. He was doing exactly what he thought the owners told him to do. I would dispute that that's what the evidence shows. The evidence shows that he had permission to sit in the car, not take the car, Your Honor. Well, that's what the owner of the car, the woman, said. But the man gave him a key. The husband gave him a key. Yes. And said, take the car. And as far as he knew, I just don't see on that evidence that there was any evidence that he was seeking the emboldenment of a gun in his pocket to do what the husband of the person that owned the car, who had a key and who gave it to him, just to take a short trip up to the casino to get some money to his hotel, get money and come back, not to do anything nefarious with the car. I don't see how he needed emboldenment under those circumstances at all. I think having a firearm in connection with a stolen vehicle would help you in additional ways. You're not arguing, are you, that every time you have a stolen weapon in your pocket, every crime that you otherwise might commit, you're going to be subject to possession of a weapon in connection with the crime that you're committing? You're not arguing that? No, Your Honor. But in looking at the facts of this case, the defendant could be emboldened with a firearm and the stolen car. And I'll point the Court to the evidence about the defendant's arrest. The defendant could have used that firearm to defeat the arrest when he was caught with the car. So that is something that the defendant could have clearly been emboldened to do. So I think the District Court was well-founded. But there's no evidence that he was anticipating any arrest. I mean, it was just going to be to this hotel room and back. He wasn't fleeing. He wasn't trying to take the car and flee where you might think, well, somebody is going to try to counter me. Quite frankly, we don't know what the defendant's intent was. We know what his proffer was. He said, I was just going to go to the hotel to get my debit card. I mean, you can speculate. But I don't see any evidence to support a claim that that weapon was performing any emboldenment function for this defendant. Again, Your Honor, I would— Is this challenged here? I don't believe so, Your Honor. I felt the same way. I just didn't see that it was challenged. This seemed to be questionable to me, too. But I didn't see any challenge to this in the briefing. Your Honor, I don't believe it's before the court. With that, Your Honor, I would ask this court to affirm the opinion below or affirm the sentence below. And if there's no more questions. Any questions? Well, I'd like to return to the McGirt issue as long as we have a minute to go. What do you make the OCCA's decision in Matloff? Does that case—how does that case help you and does it decide the issue here? Your Honor, I apologize. The Matloff decision is not coming to me. All right. Well, let's switch over to our decision in Chacon v. Hapke. Does that ring a bell? It does, Your Honor. I have cited that in my brief. If you'll give me one second, I'll refresh my recollection. Well, in the time we have left, anything else you want to say that might help us on this one? Open-ended question. Your Honor, finality of convictions has to mean something. For whatever reason, the defendant in this case chose not to attack his final convictions and waited until sentencing to do so. There are a myriad of reasons why the defendant may have chosen not to do that. But regardless, as a matter of fact, the finality of that conviction has to mean something. We cannot wait until years after the fact to all of a sudden come and challenge something on a non-constitutional basis, by the way. There's no allegation that he was denied defense counsel. There's no allegation he was forced to testify against his own penal interest. So there's no constitutional issue there that he's raising. Whether the state may have had some type of jurisdiction at the time of that conviction is simply not relevant to the fact that it continues to be valid today at sentencing. Thank you. Thank you, Counsel. Thank you, Your Honor. Cases will be submitted and counsel are excused.